WILLIAM WEED, Respondent, *v.* DANFORTH N. BARNEY and others, Appellants.

The defendants, a joint stock association, carrying on business as express-men, and who were also freight agents of the Pacific Mail Steamship Company, received from the plaintiff merchandise in a package marked " C. O. D." to be conveyed from New York to San Francisco, giving him a bill of lading signed by them as agents for the steamship company. At the plaintiff's request, they agreed to deliver the goods to the consignee and to collect the amount due thereon, which amount they were to return to the plaintiff. Subsequently, while the goods were in the defendant's warehouse, and after the consignee had been several times notified to call and take them away, which he had promised to do, they were destroyed by the explosion of a package of nitro-glycerin. In an action brought by the plaintiff to recover the value of the goods,—*Held*, that he was not entitled to recover, and that the liability of the defendant was that of warehousemen only.

(Argued April 10th, 1871; decided April 25th, 1871.)

APPEAL by the defendants from a judgment against them at the General Term of the Court of Common Pleas of the city and county of New York, entered upon a case submitted under section 372 of the Code.

This action was brought to recover of Wells, Fargo & Co., a joint stock association, carrying on business as general agents, expressmen, forwarders and warehousemen, in various parts of the country, compensation for a case of merchandise which was destroyed by the explosion of a package of nitro-glycerin, while both packages were in their warehouse in San Francisco. The nitro-glycerin was artfully concealed, so that the contents of the package were not known to Wells, Fargo & Co.

Wells, Fargo & Co. were agents of the Pacific Mail Steamship Company in New York and San Francisco for

receiving freights, freight money, and giving bills of lading for freights.   On the 5th of February, 1866, the plaintiff delivered to a clerk of Wells, Fargo & Co., at their office, on the wharf of the Pacific Mail Steamship Company, in New York, the merchandise in question and received therefor a receipt signed by Wells, Fargo & Co., sole freight agents to the Pacific Mail Steamship Company. This receipt was merely evidence of the delivery of the goods at the wharf, to be used in obtaining a bill of lading at the principal office.   On the same day this " tag " was delivered up and a bill of lading received, at which time   plaintiff requested Wells, Fargo & Co. to collect the price of the goods, with all charges, on their delivery at San Francisco.   The bill of lading was headed " Pacific Mail Steamship Co., and Panama R. R. Co.," and signed " Wells, Fargo & Co., sole freight agents for Pacific Mail Steamship Co. and Panama R. R. Co." Wells, Fargo & Co., transmitted the invoice given to them by plaintiff to their San Francisco office, in an envelope, upon the back of which the following among other words were printed : " Do not deliver the whole or any part of the goods accompanying this bill until you receive the pay therefor.   Examine the bills inclosed, and follow the special instructions of the shippers, if any are given on the bill.   If the goods are refused, or the parties cannot be found notify this office. N. B. Agents must observe the above instructions in every instance." The goods arrived about March 17th, and notice was given to the consignees, and the goods tendered to them and payment demanded.   The consignees did not decline to receive the goods but promised to take them and pay the freight charges, and bill within a few days, and the goods remained in the warehouse of Wells, Fargo & Co., until April 16, 1866, when they were utterly destroyed by the explosion of a package of nitro-glycerin.

*Grosvenor P. Lowrey*, for appellants, insisted that defendants were never carriers of plaintiff's goods. (*Kirkpatrick* v. *Stainer*, 22 Wend., 244; *Mahony* v. *Kekule*, 14 C. B.,

390; *Green* v. *Kopke*, 18 C. B., 549; *Allen* v. *Bareda*, 7 Bosw., 204; *Rathbon* v. *Budlong*, 15 Johns., 1; *Lyon* v. *Williams*, 5 Gray, 557.) If such liability ever existed it terminated when goods were deposited in defendant's warehouse, and consignee had sufficient time to remove them. (*Fisk* v. *Newton*, 1 Denio, 45; *Gould* v. *Chapin*, 20 N. Y., 259, 267; *Norway Plains Co.* v. *Boston*, 1 Gray, 253; *Thomas* v. *Boston & Providence*, 10 Met., 477; *Young* v. *Smith*, 3 Dana, 91, 94; *London & N. W. R. Co.* v. *Bartlett*, 7 M. & W., 400; *Hough* v. *London & N. W. R. Co.*, L. R., 5 Exch., 51, 58; *Adams* v. *Darnell*, 31 Indiana, 20; *In re Webb*, 2 Moore, P. C. R., 500; S. C., 8 Taunton, 443; *Northup* v. *Syracuse R.*, 2 Transcript Appeals, 184; *Storr* v. *Crowley* 1 McClelland and Youngs, 129, 136.) That they were not required to give notice to consignor. (*Hudson* v. *Baxendale*, 2 H. & N., 575; *Bremer* v. *Southern Ex. Co.*, 6 Coldwell, Tenn. R., 361; *Morrison* v. *Davis*, 20 Penn, 171; *Denny* v. *N. Y. Cen. R. R.*, 13 Gray, 481; *Arent* v. *Squires*, 1 Daly, 347.)

*Samuel Hand* of counsel for respondents, insisted that the contract was made with defendants. (*Chicago R. R. Co.* v. *Merrill*, 48 Ill., 426; *Stone* v. *Wood*, 7 Cow., 454; 1 Parsons on Cont., 47; *Moss* v. *Livingston*, 4 N. Y., 209; 18 Com. B., 549; *Malpas* v. *London Rwy.*, 7 Eng. Law Rep., 1 C. P., 336.) In any event they were liable as common carriers after taking the goods from the ship. (*Gulliver* v. *Adams Express*, 38 Ill., 503; *Le Centeur* v. *London Railway*, Law Rep., 1 Q. B., 54; *Sweet* v. *Barney*, 23 N. Y., 335; *Bulger* v. *Densmore*, 51 Barb., 69; *McDonald* v. *Western R. R. Co.*, 34 N. Y., 501–2; 2 Pars. ed. "55," 147; *Tooker* v. *Parmer*, 2 Hilton, 76; *Hyde* v. *Trent. Nav. Co.*, 5 T. R., 395; *Am. Ex. Co.* v. *Lessem*, 39 Ill., 312; *Baldwin* v. *Express Co.*, 33 id., 197.)

By the Court—PECKHAM, J. Whether Wells, Fargo & Co. were liable, as common carriers or otherwise, for the pack-

age received at New York for San Francisco, as between those two cities, is not material to this controversy. The defendants received the package at the ship's tackles at San Francisco, and their responsibility, confessed by them, commenced. They were to deliver the package to Finch & Co., at San Francisco, and collect the amount marked thereon, together with charges and commissions.

The package was received by the defendants on the 17th of March, and put in their warehouse, and it was tendered to the consignees and payment demanded. This was repeated several times, until, on the 16th of April, when the package was destroyed, without fault of the defendants.

Let it be remembered, that this package could not have been delivered by the defendants. It was to be delivered only upon payment of the money; and the money was not paid. There was no refusal to receive or to pay. The consignees promised to receive and pay each time, and their delay in doing so was not unusual.

Thus the package remained in the defendants' warehouse until it was destroyed, without their fault.

We have lately held, that a passenger's baggage, arriving at the end of the journey, and not called for until three days thereafter, was then held by the carriers, as warehousemen. (*Burnell* v. *N. Y. Central R. R. Co.*, ante *p.* 184; and see *Roth* v. *Buffalo and State Line R. R.*, 34 N. Y., 548; *Goold* v. *Chapin*, 20 id., 259; *Northrup* v. *Railroad*, 2 Trans. App., 183; *In re Webb*, 8 Taunt., 443.)

After the defendants had tendered the package to the consignees and demanded the money, and after the consignees had had a reasonable time to call for and receive it, I think the defendants held the package as warehousemen, and not as common carriers, and were thereafter responsible for the care of warehousemen merely, whatever their attitude before. As warehousemen, it is not pretended they were liable.

But it is insisted that the defendants should have given notice to the consignor, when the consignees did not receive and pay for the package. Was there any contract to do so?

All there was on that subject was a mere direction from the defendants here to their agents there "to notify this office" "if the goods are refused or the parties cannot be found." This could scarcely be regarded as a contract with the consignor. Nor did either contingency happen. The goods were not "refused;" but the consignees promised to take and pay for them, within the time usual at San Francisco. What was there to notify, so long as these consignees were acting as others usually did at that place, if the practice were reasonable and valid? Neither counsel has questioned the validity of this practice, and I do not propose to pass upon it. The situation and location of the parties must be considered in reference to notice. Mail-time then, between New York and San Francisco, was twenty-two days. The defendants, of course, expected to get pay for the goods before a letter could be answered. Telegraphing was expensive; and there does not seem to have been occasion for its use. There is no statement that it was usually or ever resorted to under such circumstances.

The authorities would not seem to require notice under the facts of this case, though notice may be sometimes necessary.

Expressmen are not required to do unreasonable or absurd things. (*Heugh* v. *Lond. & N. W. R. Co.*, 5 L. R. [Exch.], 51; *The Lond. & N. W. R. Co.* v. *Bartlett*, 7 Hur. & Nor., 400; *Kremer* v. *South. Ex. Co.*, 6 Cold., 356; *Gulliver* v. *Adams Ex. Co.*, 38 Ill., 503.)

In the case at bar, what had the expressmen to communicate if they had given notice? Nothing unusual, as nothing unusual had occurred. But suppose they had notified the home office of the whole facts, and they had directly come to the knowledge of the consignor? He had thus become aware that some days had elapsed and the money had not been paid, but had been promised, and no doubt would be paid in a few days, as was usual at that place. Would the consignor have given any directions at war with the course pursued by defendants? In all probability he would not. But if he had given directions by mail to return the goods forthwith to

New York, the order would have arrived too late; it would not have prevented the loss.

Thus it was not the lack of giving notice that caused the loss, hence defendants are not liable for omitting to give it. (*Morrison* v. *Davis*, 20 Penn., 171; *Denny* v. *N. Y. Cent. R. R. Co.*, 13 Gray., 481.)

The judgment is reversed and judgment ordered for defendants.

All the judges agreeing, except FOLGER and RAPALLO, J. J., who did not vote.

Judgment reversed, and judgment ordered for defendants, with costs.