Aug. 12, }
1875. }                        MURRAY v. WARNER.

*Carriers—Delivery.*

A bailee of goods, sending them by a carrier, may sue the carrier for the delivery of the same to the consignee without payment, when payment was imposed as a condition of delivery.

CASE, to recover the value of a coat and vest under a count, which alleged that the defendant was a common carrier of goods and merchandise from Exeter to Amesbury and Newburyport; and that, on October 27, 1870, the plaintiff was possessed of a certain coat and vest, and by his agent delivered the same to the defendant to carry from Exeter to Amesbury and deliver to one Charles M. Abell, provided that Abell should, upon the delivery of said coat and vest to him, deliver to the defendant for the plaintiff six spring bed-bottoms, valued at $27; and that the defendant received the coat and vest to be carried and delivered upon those conditions, but delivered them to Abell without obtaining from him said spring bed-bottoms, or any part of them, by means of which the coat and vest were wholly lost to the plaintiff. There was also a count in trover. The plea was the general issue. By consent of the parties, the case was tried by the court at a trial term of the late supreme court. At the request of the defendant, the facts of the case were reported.

In October, 1870, the plaintiff was a common carrier by express, upon the Boston & Maine Railroad, from Newmarket to Boston, Amesbury not being on his route. The defendant was a common carrier by a two-horse mail-stage between Exeter and Newburyport by way of Amesbury, stopping about ten minutes at Amesbury, but having no place of business there. B. F. Haley was a merchant tailor at Newmarket, accustomed to take orders at Amesbury. C. M. Abell was a boarder at a hotel in Amesbury called the American House, and was selling spring bed-bottoms there. Haley was at Amesbury, and contracted with Abell to make for him a coat and vest, valued at $27, for six spring bed-bottoms, valued at $4.50 each, and took his measure. On October 21, 1870, Haley delivered the coat and vest to the plaintiff, directed to " C. M. Abell, Amesbury, Mass., to be left at the American House," and requested the plaintiff to send it by way of Exeter, meaning by the defendant's stage. The bundle was not marked C. O. D. A bill accompanied the bundle, which was substantially as follows:

" C. M. Abell to B. F. Haley, Dr.,
    1 coat and vest,                                              $27.00
    C. O. D. 6 spring beds.

                        Paid        B. F. HALEY."

Haley was in the habit of sending bundles by the plaintiff's express,

and sometimes with bills for collection. It did not appear that he gave the plaintiff any directions except those stated, nor that there was any express agreement on the part of the plaintiff to carry the bundle to Amesbury, nor any express undertaking on the part of the plaintiff or the defendant except as is herein stated, nor that any business contract existed between the plaintiff and the defendant. The plaintiff, at the time of receiving and sending the bundle, understood that it was a C. O. D. bundle; but it did not appear that he took notice or was informed that it was not payable in cash. The plaintiff enclosed the bill in a wrapper marked on the outside C. O. D., and the next morning, while on his way to Boston, delivered the bundle and wrapper, with bill enclosed (attached to the bundle by being tucked under a string), to Andrew J. Brown, the plaintiff's agent for the transaction of express business at Exeter. Brown, or a person employed by him, on the same day delivered them to the defendant's brother, who temporarily drove the defendant's stage that day, informing him that there was $27 to be brought back. The defendant's brother, on the next trip to Newburyport, called at the American House and inquired for Abell, who was temporarily absent. He then left the bundle and bill in care of the clerk of the hotel, notifying him that he wanted $27 to carry back the next day. The defendant drove his stage to Exeter on the following day. Being informed by his brother about the bundle, he on his way called at the hotel for the $27, but Abell had not returned. Three or four days afterwards, the defendant, when again on his way to Exeter, being informed that Abell was at Exeter, took the bill. Between Amesbury and Exeter he met Abell, and called on him for the $27, but was informed by him that the bill was payable in spring bed-bottoms, and that he had paid it in spring bed-bottoms. Previous to this, neither the defendant, his brother, nor Brown knew that the bill was payable in spring bed-bottoms, but that it was to be paid in cash before delivery of the bundle to Abell. The defendant then examined the bill for the first time. The next day he returned it to Brown, and called for an explanation. Brown returned it to the plaintiff, and the plaintiff called on Haley for an explanation, who replied in substance,—" The bill explains itself: collect six spring beds;" and the plaintiff directly afterwards returned the bill to Brown, and Brown returned it to the defendant, with directions to " bring the spring bed-bottoms or the money." The defendant took the bill, and when next at Amesbury left it again at the American House, informing the clerk that it was payable in spring beds, and he had nothing to do with it; and not long after that the bundle and bill were at different times delivered to Abell, the bundle by the hotel-keeper and the bill by the clerk. A short time afterwards Haley was at Amesbury, and saw Abell with the coat and vest on him. Abell then told Haley that he was going to pay him before Haley left Amesbury, and Haley replied " very well," or words to that effect. Haley was willing to accept the bed-bottoms or the money from Abell, but it was not his intention to release or prejudice any claim he might have against the defendant or the plaintiff. Neither

the plaintiff nor said Haley has ever received the bed-bottoms or the money. The defendant might have carried on his stage six spring bed-bottoms such as Abell contracted to furnish to Haley.

Upon the foregoing facts the court found a verdict for the plaintiff, assessing damages in the sum of $27, and interest from November 1, 1870, unless it shall be determined by the whole court that this action cannot be maintained in the name of the present plaintiff. To this finding the defendant excepted, and the questions arising upon the case were reserved. Judgment is to be rendered for the plaintiff or for the defendant, as the whole court shall order.

*Marston*, for the defendant, cited *Gray* v. *Jackson*, 51 N. H. 9, *Railroad* v. *Manufacturing Co.*, 16 Wall. 318, *Price* v. *Oswego Railroad*, 58 Barb., *Weed* v. *Barney*, 45 N. Y. 344, *Railway Co.* v. *Merrill*, 48 Ill. 425, *American Ex. Co.* v. *Lesem*, 39 Ill. 312, *Salinger* v. *Simmons*, 2 Lansing 325, *Williams* v. *Hillard*, 22 How. 137.

*Wiggin*, for the plaintiff, cited *Elkins* v. *Railroad*, 19 N. H. 337, *Mayall* v. *Railroad*, 19 N. H. 122, *Woodman* v. *Nottingham*, 49 N. H. 387, 2 Redf. on Railways, sec. 175, par. 8 and 9, Shear. & Redf. on Negligence, sec. 54, *Bowlin* v. *Nye*, 10 Cush. 416, *Robinson* v. *Austin*, 2 Gray 564, Angell on Carriers, secs. 319, 432, *Lichtenhein* v. *Railroad*, 11 Cush. 70, *Hyde* v. *Trent Nav. Co.*, 5 T. R. 389.

SMITH, J. 1. The first question reserved is, whether this action can be maintained in the name of the present plaintiff : and upon this point the authorities are quite uniform. A bailee of goods for hire may sustain an action against a carrier for negligence ; and it can make no difference whether such bailee was himself a carrier, to whom the goods had been originally intrusted for carriage to a point not on his route. These goods were delivered by the owner, Haley, to the plaintiff, to be carried to Amesbury, and payment for the same to be collected in spring-beds. It is unnecessary to inquire whether, if this were a case between Haley and Murray, there is evidence of a contract on the part of Murray for the carriage of these goods to a point beyond his line, and by an agent not in his employ—*Knapp* v. *Express Co.*, ante 348—or whether his responsibility ended at the terminus of his route ; for the right of Murray to maintain this action does not depend on his liability to Haley. He had the possession and custody of the goods as bailee, and not as servant of Haley ; and the defendant is liable, if liable at all, for his failure to perform the duty imposed upon him by contract or by law.

In *Freeman* v. *Birch*, 1 Nev. & Man. 420, the plaintiff, a laundress residing at Hammersmith, was in the habit of sending linen to and from London by the defendant's cart, which travelled from Chiswick to London. A basket of linen belonging to Spinks was sent by the defendant's cart, and on its way to London part of the contents was either lost or stolen. Spinks did not pay the carriage of the linen. It was

objected that the action was misconceived, and should have been brought by the owner of the linen. The objection was overruled, and a verdict returned for the plaintiff. The verdict was sustained, upon the ground that the laundress retained a special property in the goods.

To the same point is *Mayall* v. *B. & M. R. R.*, 19 N. H. 128, where GILCHRIST, C. J., says,—"If a person has a beneficial interest in the performance of a contract, or a special property or interest in the subject-matter of the agreement, he may support an action in his own name upon the contract." In *Elkins* v. *B. & M. R. R.*, 19 N. H. 337, it was held by the same learned judge, that where a bailee of property delivers it to a carrier for transportation, either the bailee or the bailor may maintain an action against the carrier to recover for the loss of the property. "The rule in such cases is stated by PARKE, B., to be, that either the bailor or the bailee may sue, and whichever first obtains damages it is a full satisfaction"—*Nicolls* v. *Bastard*, 2 Crompt. Mees. & Ros. 660; and in *Woodman* v. *Nottingham*, 49 N. H. 387, NESMITH, J., says, —"A bailee, having a special property, may recover the whole value of the property, holding the value beyond his own interest in trust for the general owner, and the judgment recovered by the bailee may be pleaded in bar to any action that might be afterwards brought by the general owner for the same property." See, also, 2 Kent's Com. 566, 2 Blk. Com. 396, Gr. Ev., sec. 637, note 4.

2. The instructions to leave the bundle at the American House were only a part of the directions to the defendant. He was also directed by the bill which accompanied the bundle to collect pay upon delivery of the goods in six spring beds; and subsequently, when he called for further explanation, was instructed to collect the beds, or their value, $27, in money. He did not, therefore, perform his whole duty when he left the bundle at the American House, where it was directed to be left. Where a common carrier has tendered the goods entrusted to him to the consignee and demanded payment, and the consignee has had a reasonable time to call for and receive them, he holds the goods as a warehouseman, and not as a common carrier, and is thereafter responsible for the care of a warehouseman merely. *Weed* v. *Barney*, 45 N. Y. 344. But the defendant, whether holding these goods as common carrier or warehouseman, could not disregard the conditions upon which the delivery was authorized. If, while holding them in the latter capacity, they had been been destroyed by extraordinary peril, he would not have been liable for their loss. *Weed* v. *Barney*, *supra*. But there is no pretence of anything of that sort here. When payment was refused, the defendant might have discharged himself from further liability by placing the goods in store—*Salinger* v. *Simmons*, 2 Lansing 325, *Williams* v. *Hillard*, 22 How. 137—or he might have notified the plaintiff, and asked for further instructions, or have returned the goods to the plaintiff. But he could not, after having undertaken to carry the goods upon the conditions imposed, relieve himself of responsibility by abandoning them to the clerk of the American House, with the declaration that he had "nothing to do with them."

A mis-delivery of goods by a common carrier is a conversion of them, and renders him liable in trover, for it is an unlawful act—*Bowlin* v. *Nye*, 10 Cush. 416, *Devereux* v. *Barclay*, 2 B. & A. 702, *Hawkins* v. *Hoffman*, 6 Hill 586; and delivery by a warehouseman of goods to a third person, even by mistake, renders him liable for the goods. *Lichtenhein* v. *Railroad*, 11 Cush. 70. Delivery to the right person, in violation of the conditions upon which delivery is authorized, would seem to be as much a wrongful act as delivery to the wrong person.

By leaving the goods with the clerk of the American House, the defendant made him his agent; and if the goods may be regarded as left at the American House in store, the defendant was bound to see that they were not delivered to Abell, except upon his complying with the terms imposed by the plaintiff. His neglect to do so must render him liable to the plaintiff. The presiding judge has found, that the defendant, before he examined the bill, understood that the goods were to be paid for on delivery; but, upon examining the bill and finding that it was payable in spring beds, and Abell asserting that Haley had received them, he sent for and received explicit instructions to get either the spring beds or their value in money, according to the bill;—for, suffering these instructions to be disregarded, he has become liable to the plaintiff for the value of the goods intrusted to him.

CUSHING, C. J. In this action, the court has reported certain facts as being the result of the whole investigation. On these facts the court found,—*i. e.*, from these facts the court inferred,—that the defendant was guilty; and the question to be settled by this court is, whether the facts which were proved and found tended to prove the affirmative of the issue. The case does not refer the finding of any facts to this court, but simply refers the questions of law arising on the facts reported. In other words, as I have already said, it refers the question whether the court, from the facts found, could legally and logically reach the result which it did reach.

The property was not owned by the plaintiff. The contract out of which the defendant's liability, if he was liable, grew, was made by him with the plaintiff. Was the plaintiff, in doing this, acting merely ᵗhe servant of the owner of the property? or was he so much more ᷽ mere servant as entitled him to be considered a special owner? aι. ᷽ld the court infer this fact from the facts proved? Was he a meiᵥ vant, so that his possession was the possession of the general owner ᷽ ᷽ had he such an independent possession and such a special interest ᵼ entitled him to be considered a special owner?

The property was intrusted to his care as bailee, and he had a special interest in the performance of his part of the contract, his compensation most probably depending upon his successful performance of it. If he had been a mere servant, it is probable that his compensation would not depend upon his successful performance of the work. If he did, with such diligence and capacity as he was capable of, the work assigned to him, he would be entitled to his day's wages.

So, if the plaintiff in the execution of this work had by his negligent management of his team caused an injury to some third person, the general owner of the property would not be liable for that negligence, while, if he were a mere servant of the general owner, the latter might be so liable.

I think the court might well have found from the facts that the plaintiff was bailee, with a special interest and accountability.

The authorities cited by the plaintiff abundantly show that this special interest was sufficient to entitle the plaintiff to maintain the action.

It appears to me, also, that the facts tended to show that the defendant had accepted the employment, with the understanding that he was not to deliver the goods without receiving payment at the same time; and that it was through the defendant's neglect of this order that the goods were lost to the plaintiff and to the general owner.

The court, therefore, rightly inferred, from the facts proved, the affirmative of the issue; and there must be judgment on the verdict for the plaintiff.

LADD, J. I supposed the only question raised by the case was, whether the action can be maintained in the name of this plaintiff; and that it can is sufficiently settled by the authorities already referred to.

If it is to be assumed, however, that the further question, whether a verdict for the plaintiff could be legally based upon the facts reported, is before us, I am of opinion that there was evidence to sustain such verdict. That evidence tended to show, in the first place, an undertaking by the defendant not to deliver the package and receipted bill except upon compliance by Abell with the condition and order written on the margin of the bill ("C. O. D. six spring beds"). It also tended to show a breach by the defendant of his obligation and duty as a bailee of goods, such as to make him liable for their loss. The evidence reported seems to be the same in kind, though differing in degree, as though the defendant had thrown the package over the first bridge he crossed, after finding out that the pay for it was to be collected in spring beds instead of money; and it was for the judge who tried the cause without a jury to determine the weight of that evidence.

I agree with my brethren that there should be

*Judgment on the verdict.*