DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## January, 1876.

JOSEPH GROSSMAN, APPELLANT, v. WILLIAM G. FARGO, PRESIDENT OF THE MERCHANTS' UNION EXPRESS COMPANY, RESPONDENT.

*Common carrier — when liable only as warehouseman — negligence.*

Goods were delivered July thirteenth, by the plaintiff to the defendant, a common carrier, to be transported to Pioneer, Penn., and there delivered to the consignee, upon his paying the amount due therefor. The consignee was notified of their arrival, and, although then unable to pay what was due, promised several times to do so in a few days. On the sixth of August, defendant's office was broken into, and the goods stolen. *Held* (1), that the liability of the defendant, after the notification of the consignee, was that of a warehouseman only ; and (2), that, under the circumstances, it was not guilty of negligence in not notifying the plaintiff of the consignee's inability to pay for and take the goods.

*Weed* v. *Barney* (45 N. Y., 344) followed.

The defendant's office at Pioneer, a town of about 800 inhabitants, was a small wooden building, inclosed with inch boards, but not plastered nor ceiled within; the door was locked, and the windows nailed down. The entrance to the office was effected by prying up one of the windows. *Held*, that there was no negligence on the part of the defendant, in storing its goods in such a building.

APPEAL from a judgment in favor of the defendant, as president of the Merchants' Union Express Company, directed by Mr. Justice MORGAN, before whom the case was tried without a jury.

The action was brought, to recover the value of a package of goods, delivered by the plaintiff to the company, on the 13th July, 1869, at Syracuse, New York, to be conveyed to Pioneer, Pennsylvania, consigned to Isaac Levi. The package reached its destination safely, and in due time. The consignee was notified of its arrival, and called on several occasions at the office of the company, but did not receive the property, because of his inability to pay the charges, ($67.33), required to be paid on its delivery. He promised to make payment, from time to time, between the sixteenth of July, when the package was received at Pioneer, and the sixth of August, the last time having been a few days prior to the last mentioned day. On the night of the sixth of August the office of the company was burglariously entered, and the property was stolen. No notice of the omission of the consignee to pay the charges, and take the goods, was given the consignor until subsequent to the loss of the package. Pioneer was a small town of from 600 to 800 inhabitants. The office of the company, where undelivered packages were kept, was a small building, near the railroad depot, inclosed with inch boards, but not plastered or ceiled within. It had one double outside door, with lock, and the windows were fastened with nails. The entry was made through a window, which was forced by being pried up. The judge who tried the cause, held that the company was not liable, and dismissed the complaint.

*William C. Ruger*, for the appellant.

*George N. Kennedy*, for the respondent.

BOCKES, J. :

The liability of the company for the goods in this case was, undoubtedly, that of a warehouseman. (*Weed* v. *Barney*, 45 N. Y., 344; *Burnell* v. *The N. Y. Central R. R. Co.*, id., 184.) The first case above cited, was much the same as the one at bar. PECKHAM, J., in delivering the opinion of the court, says: "After the defendants had tendered the package to the consignees and demanded the money, and after the consignees had had a reasonable time to call for and receive it, I think the defendants held the package as warehousemen, and not as common carriers." Let this

be admitted, as it doubtless must be, and the company was bound only to ordinary care and diligence in the preservation and protection of the property; such care and diligence, as prudent men exercise in respect to their own. The liability of the company is to be determined by an application of this rule.

On the part of the plaintiff, it is insisted, that the company was negligent, and therefore liable, by reason of the omission to give him notice of the consignee's neglect to take the goods, after being informed of their arrival, and for storing the package in an unsafe place.

The point that the omission to notify the consignor of the consignee's neglect to take the property, constituted negligence on the part of the company, seems answered by the reasoning of the court in *Weed* v. *Barney* (*supra*). The property in the case cited was conveyed to its destination, and remained undelivered to the consignees, under circumstances very similar to those in the case at bar. In that case, the property was held by the company in its warehouse at the place of destination, after due notice to the consignees of its arrival, from March seventeenth to April sixteenth, when it was accidentally destroyed.

During this time the consignees had, on several occasions, promised to make payment of the charges and take the property. It was urged in that case, as it is here, that the company should have given notice to the consignor when the consignees did not receive or pay for the package. True, stress was laid on the fact that the defendants, in omitting to give notice, "were acting as others usually did at that place;" but, independent of that fact, the remarks of the learned judge apply and are cogent here. He first makes the significant inquiry, whether there was any contract requiring such notice, and finds none. He further makes inquiry bearing on the question of prudent and diligent action on the part of the defendants; whether, if notice had been given of all the facts, showing that the charges, although not paid, were promised by the consignees, and probably would soon be paid, the consignor with such information, "would have given any directions at war with the course pursued by the defendants;" and he well answers that "in all probability he would not;" and he suggests also that the delay, in any view, was not the proximate cause of the loss.

The authorities cited in support of this suggestion (*Morrison* v. *Davis*, 20 Penn., 171; *Denny* v. *N. Y. Cent. R. R. Co.*, 13 Gray, 481), were quite satisfactory and conclusive.

It might, perhaps, be added, that the same duty devolves upon the consignor, when the property is consigned C. O. D., to make inquiry after unusual delay, without return, as would rest upon the carrier or warehouseman, to give notice back to the consignor of the consignee's default. I am entirely satisfied, that the omission to give the notice to the consignor here urged, created no liability against the defendant.

Nor was the defendant liable on the ground, that there was in this case, an omission of ordinary care and prudence in protecting the property. It was deposited in the office of the company, where such property, while awaiting delivery, was usually placed and kept. The building was such, as is ordinarily used for deposit by express companies, at small towns like Pioneer. It was made ordinarily secure by door locks and window fastenings. That it was not plastered or ceiled within, and only inclosed with inch boards, made no difference in this case, for the entry was not through the wall of the building. The case must be considered with reference to the particular cause of loss. Here negligence is predicated on the circumstance of robbery. The felony was effected by an entry through a window. It matters not whether the building was ordinarily safe against fire, for it was not burned. If the building had been burned, and the property had been consumed in the conflagration, the question would have been as to its safety against fire, and as to the circumstances attending the origin of the fire. If the entry had been effected by undermining the building, or by breaking through the walls, the question would have involved the condition of its foundation in the one case, and the firmness and strength of the walls in the other. The entry having been made through a window, the case must be considered with reference to that fact. What was the condition of this window, how constructed, how fastened? Was it such, in all respects, as answered the requirements of ordinary prudence, the test being, that degree of care and attention which men of ordinary prudence, exercise in the protection of their own property? Scarcely any building is, at this day, entirely safe against the mechanical appliances and skill employed by burglars

to effect an entrance. Absolute safety is more than ordinary care and diligence requires. The entry of this building was by force. It seems to have been as difficult as in the ordinary case of small storehouses throughout the country. It was through a window not left open or unfastened and inviting entrance, but fastened quite as effectually as windows usually are, with a view to ordinary protection. It was opened by violence — pried open. It required a very considerable degree of force to open it. The witness says: " I could see where they put something under the window-sill and pried up; there was a dent in the window-sill two inches wide; dent in the bottom of the window-sash, dent two inches wide; pine split off the sash." This shows the window very effectually fastened. As above suggested, it is next to impossible to render any structure, or its fastenings, entirely secure against burglarious entry. It is too much, to hold this necessary, to answer the require ments of ordinary care and prudence in the protection of property.

I am of the opinion that the dismissal of the complaint was right, and that the judgment should be affirmed.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed, with costs.