# Fowler, Appellant, *v.* Seaboard Airline Railway Company.

*Carriers—Common carriers—Sale of goods for charges—Conflict of laws—Warehousing.*

1. Where a bale of fish netting is delivered in Pennsylvania to a railroad company to be carried to a point in Florida, under a bill of lading which provides that if the goods are not claimed within twenty-four hours from their arrival at the point of destination, they may be stored at the owner's expense, and it appears that the goods duly arrived and that a month thereafter the owners were notified of that fact, and to make some disposition of the bale, but did nothing, the railroad company will be justified in selling the goods at public auction for storage charges under a Florida statute which provides for the sale of goods by warehousemen for storage charges where the goods have been unclaimed for ninety days. In such a case the law of Florida will be applied, although the contract of shipment was made in Pennsylvania.

2. The owners of the goods, in such a case, cannot claim that they were misled in regard to the sale, because in a number of other instances there had been a delay in the payment of freight and the claiming of goods, where the evidence does not show such an established usage as to make it a custom upon which the owners were entitled to rely.

Argued Dec. 11, 1913. Appeal, No. 173, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1909, No. 3,377, for defendant on case stated in suit of Samuel S. Fowler et. al., trading as Fowler Net Twine Company, v. Seaboard Airline Railway Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Case stated to determine liability for goods sold at public auction.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant on case stated.

*A. U. Bannard*, with him *C. S. Eastwick*, for appellants. —A common carrier cannot invoke a statutory right conferred upon a "warehouseman" alone: Arlington v. Railway Co., 127 Ga. 721.

Even a railroad cannot, without a real notice, abandon, to his injury, its previous course of dealing with a customer, whether the departure be authorized or not: Ridgway Grain Co. v. R. R. Co., 228 Pa. 641; Oliver v. Brophy, 18 W. N. C. 427; Beatty v. Masavage, 13 Luz. Leg. Reg. 40; Cogley v. Browne, 11 W. N. C. 224.

The operation of the act, contended for by defendant, is forbidden by the fourteenth amendment to our fundamental federal law: Clark v. Everly, 2 Clark, 219; Howard v. Express Co., 47 Pa. Superior Ct. 416.

*Graham C. Woodward*, with him *Theodore J. Grayson* and *Albert B. Weimer*, for appellee:—The case is governed by the law of Florida: Springs v. R. R. Co., 46 S. C. 104; Herf v. Lackawanna Line, 70 Mo. App. 274.

The lex loci contractus which was the law of Florida was complied with. The course of dealing between the Seaboard Airline railway and the appellants does not alter the law to be applied to the facts of this particular case: Ridgway Grain Co. v. R. R. Co., 228 Pa. 641.

OPINION BY ORLADY, J., February 20, 1914:

This case stated shows, that the plaintiffs on September 17, 1908, delivered a bale of fish netting to the Penna. R. R. Co. at Philadelphia, consigned to the order of themselves, to Sarasota, Mantee county, Florida, with notice to be given to the "Sarasota and Boca Grande Fishing Company," as purchasers. The property was transferred by the initial carrier to the defendant company, and by it carried safely over its line to destination, where it arrived on September 19, 1908. The bale remained in the custody of the defendant com-

pany from the time of its acceptance, until about July 21, 1909, when it was sold by the defendant at public auction, for the unpaid charges thereon, as unclaimed freight, etc; the proceeds of the sale exceeding these charges by $4.05. This action is brought to recover the value of the goods, $175.85, "if the court be of opinion that the plaintiff is entitled to recover under the facts agreed upon, otherwise the amount of the judgment to be $4.05, as stated."

The court below entered judgment for the latter sum, and this appeal by the plaintiff is presented to review that judgment. Incorporated in the case stated, is a statute of the state of Florida, in force at the time the property was consigned and sold, as follows: "Warehousemen and wharfingers shall be authorized to sell at public auction all goods, wares and merchandise or other articles not perishable, that shall have been received by them and remaining on hand unclaimed for the space of not less than ninety days, but such sale shall, in no instance, take place without previous notice having been first given at least thirty days after the expiration of ninety days or more; in the case of goods that are not perishable, said previous notice to be given in one newspaper published at the place of sale, designating the time and place of sale. The owner or consignee of such goods may at any time prior to such sale come forward and claim the same, and after paying all charges be entitled to restitution."

It is conceded that the sale was made in "due compliance with the act;" but the plaintiffs had no actual notice or knowledge of the sale, and when subsequently informed of it, made a tender of $4.05 and demanded the property, which was refused by the defendant.

It appears that on October 19, 1908, the defendant, by its local superintendent at Jacksonville, Fla., notified the plaintiffs by letter to Philadelphia, that the bale of nets had been on hand at Sarasota, uncalled for, since September 19, and added, "It is important that disposi-

tion be furnished at once. Please advise by return mail." No attention was paid to this notice either by a reply acknowledging it, or direction to the "Net Co. at Sarasota" though the plaintiffs had on September 16, 1908, sent their bill, itemized and scheduled in quantity, quality and price, and amounting to $175.85, with draft and bill of lading to a bank at Sarasota, from which they were returned promptly without payment to the plaintiffs, so that within thirty days after shipment of the bale the consignor had direct notice from the carrier that the goods had reached destination and had been refused by the purchaser. In this bill of lading it is provided, "Clause 5, Property not removed by the person or party entitled to receive it within twenty-four hours after its arrival at destination may be kept in the car, depot, or place of delivery of the carrier, at the sole risk of the owner of said property, or may be, at the option of the carrier, removed and otherwise stored at the owner's risk, and cost and there held subject to lien for all freight and other charges. . . ." and by clause 10, it is provided, "owner or consignee shall pay freight at the rate herein stated, and all other charges accruing to said property, before delivery, and according to weights as ascertained by any carrier hereunder."

From the facts stated there was a contract of carriage of this bale of nets from Philadelphia to Sarasota, and it was fully performed by the delivery of the goods at the named destination. It was held a reasonable time by the carrier, and ninety days passing without acceptance by the named consignee or the purchaser, to whom notice had been given by the consignor, the duty of the carrier ended. The bill of lading which passed through the hands of the consignor contained the statement that a twenty-four hours' delay in removing the goods, after they had been received at destination subjected them to the provision in the bill of lading—that "they might be kept in the car, depot, or place of de-

livery of the carrier, at the sole risk of the owner, or, at the option of the carrier, they might be removed or otherwise stored at the owner's risk and cost and there held subject to lien for all freight and other charges."

With this bill of lading knowledge, supplemented by actual notice given by the carrier of the arrival of the goods, and a request for "disposition to be furnished at once" the plaintiffs did not move, so that some months thereafter, the defendant was clearly within its rights in availing itself of the remedy provided by the Florida statute to recover the amount of its lien for freight and other charges, by making sale of the unclaimed property, "in due compliance with the statute." It is not material that, instead of moving at once, the defendant delayed the advertisement and sale for some months longer, unless the plaintiff was prejudiced by this delay. This is not suggested by the case stated, and the notice from the carrier having been ignored by the plaintiff, and the subsequent proceedings being regular in every way, the plaintiff was not harmed by the delay in making the sale.

The statute does not prescribe the time within which the sale shall take place after notice thereof by publication has been given, but only that the notice of the sale shall be given at least thirty days after the expiration of ninety days or more that the goods have been on hand as unclaimed. The limitation of time within which the carrier as such is to be held responsible must be a reasonable one. The bill of lading named twenty-four hours, while in fact the defendants delayed making sale for nine months, within any day of which the plaintiff could have paid the charges and lifted his property. After a reasonable time has elapsed the liability of the carrier becomes modified or changed entirely, depending on the facts of the particular case, as it is only bound to exercise ordinary care to secure the safety of the goods, and after holding them for nine months, subject to the plaintiff's order, the defendant was a

warehouseman only: National Line Steamship Co. v. Smart, 107 Pa. 492.

While the authorities in the different states are not uniform on this question, it seems on a review of many of them, to be the better supported rule to hold, that the criterion by which the carrier's liability as such, is to be determined, is whether the duty of carrier as such, has been fully performed. When this is done, the liability of warehouseman attaches. As stated in Gregg v. Ill. Central R. R. Co., 147 Ill. 550, s. c., 37 Am. State Reps. 238: "In all such cases, the question is, whether anything remains to be done by the carrier in completion of its contract to safely carry and deliver the goods at the place of destination. If there is, its liability as carrier continues. If there is not and the goods remain in the possession of the carrier, its liability in respect thereof, when not varied by contract or usage, is as a warehouseman only: Penna. R. R. Co. v. Naive, 112 Tenn. 239, 64 L. R. A. 443; 5 Am. & Eng. Ency. of L. 269; Hasse v. Am. Ex. Co., 94 Mich. 133, s. c., 34 Am. St. Reps. 328; Weed v. Barney, 45 N. Y. 344; s. c., 6 Am. Reps. 96.

If the consignee fails or refuses to take or accept the goods when ready for delivery at destination, the carrier remains liable for them as a warehouseman only: Sonia Cotton Oil Co. v. Steamer, 106 La. 42, s. c., 87 Am. St. Reps. 293. Railroads usually have freight houses in which goods are placed on reaching destination, and when placed therein after a reasonable time for acceptance by the consignee, the relation of carrier is changed to that of a warehouseman: Penna. & N. Y. Canal & R. R. Co. v. Waltham,1 Walker, 139.

The carrier's lien, gives the right of possession but not the right to sell, but when the possession is changed from the carrier to that of a warehouseman, the right to sell in discharge of the lien for freight and other charges, is regulated by statute. The Florida statute in this case stated, definitely fixes the proceeding by

which the sale may be made and in this case, it is conceded that this particular property was sold by the defendant "in due compliance with the act" of 1906.

But it is urged by the appellant that the plaintiff was misled in regard to this sale, for the reason that a number of consignments of similar goods had been made by the same plaintiff, by the same carrier to the same net company at Sarasota, both previous and subsequent to the one involved, and that the defendant was not as rigorous in following the remedy fixed by the statute as it might have been, and indulged the plaintiff and the purchaser in irregular credits and delays in making payments. The sixteen other shipments represent as many delayed payments of freight—ranging from one month to one year. These indulgences do not seem to have been under any order or system. There was no established method of dealing, or course of conduct alleged to justify the consignor in thinking that he was entitled to or would receive any extension of time from the warehouseman, or that the property would not be disposed of as provided by the bill of lading. The method in vogue may have been irregular, uncertain and unbusinesslike on each side, but it lacked the certainty and established usage to make it a custom on which the plaintiff was entitled to rely. No right was waived by the defendant in granting the delay to asserting its statutory right, and proceeding by what is conceded, "due process of law" in giving the notice and making the sale.

We are dealing with this question as the parties present it in the case stated and on these alone. The contract of the warehouseman arose in Florida, where the consideration and performance were regulated by the Florida statute, and it is to be decided under that law.

While the inception of the transaction was in this state the bill of lading provided for the disposition of the goods in Florida, and for an entirely different relation between the parties. It was to be performed in

Florida though made here, and the law of the latter state controls. As stated in Burnett v. Penna. R. R. Co., 176 Pa. 45, when a contract is made in one state or country to be performed in another state or country its validity and effect are to be determined by the laws of the place of performance: Musser v. Stauffer, 192 Pa. 398; Nat'l Union Bank v. Shearer, 225 Pa. 470.

The facts in Ridgway Grain Co. v. Railroad Co., 228 Pa. 641, relied on by the appellant are radically different from the ones presented here and controlled by different rules of law.

The judgment is affirmed.