# Ridgway Grain Company *v.* Pennsylvania Railroad Company, Appellant.

*Carriers—Common carrier—Bill of lading—Contract—Delivery to consignee—Waiver—Claim for loss.*

1. In an action by consignors against a railroad company for the value of freight delivered to the consignee without surrender of the bill of lading, it is error to exclude evidence tending to show a similar course of dealing in reference to a large number of shipments made in the same way by plaintiffs, of which they had full knowledge and in which they acquiesced for more than a year, during which time they continued to make numerous deliveries to the same consignee, without protest or notice to defendant company.

2. A provision in a shipping contract requiring claims for loss or damage to freight to be presented within a certain time is not available to a common carrier in case of a conversion of the goods by the carrier, and misdelivery of goods by the carrier to an unauthorized person is a conversion.

*Practice, C. P.—Affidavit of defense—Election—Appeals.*

3. The question of the necessity of an affidavit of defense in an action against a carrier for loss of goods, where plaintiff waives the tort and sues in contract, cannot be raised by the defendant on appeal, where defendant has elected to file an affidavit, and proceeded to trial under the issue raised by the pleadings.

Argued May 3, 1910. Appeal, No. 43, Jan. T., 1910, by defendant, from judgment of C. P. Elk Co., Jan. T., 1908, No. 130, on verdict for plaintiffs in case of Charles O. Salberg and Herbert T. Morey, doing business as Ridgway Grain Company, *v.* The Pennsylvania Railroad Company. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit against a carrier for misdelivery of goods. Before HALL, P. J.

The facts appear in the opinion of the Supreme Court.

At the trial the court under objection and exception excluded evidence tending to show a course of dealing

continuing for a long period by which goods were surrendered by the defendant to the consignee without requiring a surrender of the bill of lading. [3–5]

The court refused binding instructions for the defendant. [6]

From the record it appeared that before the trial the court made the following order:

We are of the opinion that the statement of claim sets up a contract and a breach thereof sounding in damages in a sum certain which is easily ascertainable without the intervention of a jury, and that while the plaintiffs might at their option have brought the action ex delicto by reason of the fact that the defendant company is a common carrier, that having waived the tort and elected to proceed in an action of assumpsit alleging damages purely for breach of contract and not for the defendant's negligence as a common carrier they are entitled to an affidavit of defense.

It is, therefore, ordered and decreed that unless a sufficient affidavit of defense be filed by the defendant to the plaintiffs' statement of claim within fifteen days hereafter that the rule for judgment in this case be made absolute, the amount to be liquidated by the prothonotary.

Verdict and judgment for plaintiffs for $8,074.72. Defendant appealed.

*Errors assigned* among others were (3–5) rulings on evidence, quoting the bill of exceptions; (6) above instructions, quoting them, and (16) order requiring plaintiffs to file an affidavit of defense.

*Thos. H. Murray*, with him *C. H. McCauley*, for appellant.—Under the course of dealing shown, the carrier was not responsible: Chicago Packing, etc., Co. v. Ry. Co., 29 S. E. Repr. 698; Bank v. Phila. & Reading R. R. Co., 163 Pa. 467; Ontario Bank v. Steamboat Co., 59 N. Y. 510; Forsyth v. Oil Co., 53 Pa. 168; Hazleton Coal Co. v.

Coal Co., 57 Pa. 301; Oliver v. Brophy, 18 W. N. C. 427; Wanamaker v. McCaully, 11 W. N. C. 450; Cogley v. Brown, 11 W. N. C. 224; Penna. R. R. Co. v. Stern & Spiegel, 119 Pa. 24.

The claim not being within time called for by bill of lading, the plaintiff cannot recover: Cole v. Western Union Tel. Co., 22 N. W. Repr. 385; Weir v. Express Co., 5 Phila. 355; Southern Express Co. v. Glenn, 1 S. W. Repr. 102; Armstrong v. Ry. Co., 54 N. W. Repr. 1059; Wolf v. Western Union Tel. Co., 62 Pa. 83; Broadwood v. Express Co., 41 So. Repr. 769; Case v. Ry. Co., 39 N. E. Repr. 426; Louisville, etc., Ry. Co. v. Widman, 37 N. E. Repr. 554; Express Co. v. Caldwell, 88 U. S. 264; Walters v. Express Co., 56 Pittsburg L. J. 97.

No affidavit of defense was required in this case as it was a case sounding in tort, which, under the old practice, would have been case and under the civil procedure act trespass: Corry v. R. R. Co., 194 Pa. 516; Osborn v. Bank, 154 Pa. 134; Hirst v. Whiteside, 30 W. N. C. 275; Krause v. R. R. Co., 20 W. N. C. 111.

*Max L. Mitchell*, with him *E. H. Baird*, for appellees.— If a bill of lading is indorsed to order, carrier must require surrender of bill before delivery: Shenk v. Steam Propeller Co., 60 Pa. 109; Graff v. Bloomer, 9 Pa. 114.

The evidence showing that the railroad had been accustomed to delivery without requiring surrender of bill of lading was properly excluded: The Delaware, 81 U. S. 579; Steamboat Co. v. Brown, 54 Pa. 77; Burger v. Farmers' Mutual Ins. Co., 71 Pa. 422; Bank v. P. & R. R. R. Co., 163 Pa. 467.

The consignor was guilty of no laches in enforcing claim: Hayes's App., 113 Pa. 380; Leaming v. Wise, 73 Pa. 173.

The provision as to claim for damages applies to loss in transit: Clyde v. Hubbard, 88 Pa. 358; Porter v. Southern Express Co., 4 S. C. 135; Goodman v. Transportation Co., 6 Pa. Superior Ct. 168.

Opinion by Mr. Justice Potter, July 1, 1910:

The question here involved is the liability of defendant company for the value of seventeen car loads of grain and feed, delivered by the agent of the defendant, to the consignee, without requiring the surrender of the bills of lading. As a general principle, if the carrier delivers to anyone, even to the consignee, without requiring the production of the bill of lading, it does so at its peril. But there may be cases in which, by custom or a course of dealing between consignor and consignee, delivery has, with the knowledge and acquiescence of the consignor, been permitted without the surrender of the bill of lading. In such a case, the carrier, in the absence of notice that the bill of lading is being held as security for the purchase price of the goods, may be justified in making delivery without requiring the surrender of the bill of lading. See 1 Hutchinson on Carriers, sec. 177, where the author cites National Bank v. P. & R. R. R. Co., 163 Pa. 467. In the present case, the course of dealing between the plaintiffs and their consignee, Duke Copelin, extended over a period from June, 1905, to June, 1907, and during that time they sold him some fifty-one car loads of merchandise. There is evidence to show that all, or nearly all of these cars were delivered to the consignee without obtaining the surrender of the bills of lading. For some thirty-four of the cars, payment was made after delays varying from 15 days to 251 days. For the value of the contents of the remaining seventeen cars, for which no payment has been made by the carrier, the plaintiffs here seek to recover from the defendant. No complaint seems to have been made to the defendant company until June, 1907, although Copelin was then indebted to plaintiffs for cars delivered in October previous. The letters of plaintiffs to Copelin, which were in evidence, not only show that they knew of the practice under which Copelin was permitted to take the cars without surrendering the bills of lading, but that they were satisfied with it, providing Copelin made pay-

ment to them within a reasonable time. What they objected to was, not the practice of delivering the cars without surrendering the bills of lading, but it was the large amount of the credit thus obtained from them by Copelin, and the length of time to which it was extended. These letters clearly show a course of dealing which accepted the fact of delivery of cars without reference to bills of lading, and under which plaintiffs charged interest upon drafts, and strove to get Copelin to reduce the amount of his indebtedness to them. Yet in the face of all this, they continued to ship additional car loads of grain to Copelin, without a word of complaint to defendant company, or any hint to it, that they desired to terminate the course of dealing which they had pursued, and would in the future rely upon the bills of lading to secure to themselves possession of the grain until it was paid for by Copelin. In North Penna. R. R. Co. v. Commercial Nat. Bank, 123 U. S. 727, it was held that a shipper was not bound by a custom to deliver live stock to a drove yard company, without the production of the bill of lading, where knowledge of the custom was not brought home to the shipper. But in the present case the court—erroneously we think—excluded an offer of evidence which tended to show, not a general custom, but a course of dealing in reference to shipments made in the same way by the plaintiffs, of which they had full knowledge and in which they acquiesced for more than a year, during which time they continued to make numerous deliveries to the same consignee, without protest, or notice to the defendant company. Of course the terms of the bills of lading could not be departed from without the consent of the consignors; or if the rights of a bank or any other holder for value intervened, they could not be prejudiced. But here we have no third parties, as the transaction included only the consignor and the consignee. In such case, if the shippers saw fit to repeatedly waive their rights under the terms of the bill of lading, and thus set up a course of dealing entirely distinct from

that contemplated by the terms of the bill of lading, they were at liberty to do so.

The theory upon which the trial judge submitted this case to the jury is not very clear. Apparently the sole question he submitted to the jury was as to plaintiffs' knowledge of the acts of the defendant's agent in delivering the cars to the consignee, without requiring the surrender of the bills of lading, and he instructed them that if the plaintiffs knew that fact, and failed to report it until June, 1907, the verdict should be for the defendant. Under the evidence which was submitted, the letters and the oral testimony of Morey, one of the plaintiffs, there is no room to doubt the fact of plaintiffs' absolute knowledge of the deliveries of the cars without the surrender of the bills of lading, and their acquiescence therein. Morey testified that he knew the drafts attached to the bills of lading remained unpaid, and that he knew, or presumed, the grain had been delivered to Copelin. No other inference could be drawn from his testimony, and from the letters he wrote to Copelin. Even upon the theory held by the trial court, it would seem that binding instructions should have been given in favor of defendant as to the fact of knowledge and acquiescence by plaintiffs.

The ruling of the court below as to the failure to make claim for the loss within thirty days of the alleged wrongful delivery was in accordance with the authorities. In 4 Elliott on Railroads (2d ed., 1907), sec. 1512, it is said: "A valid contract may be made requiring claim for loss or damages to freight to be presented in a certain manner or within a certain time, provided it is reasonable. . . . Such a stipulation is not available to a common carrier in case of conversion of the goods by the carrier." In Chicago, etc., Ry. Co. v. Bank, 26 Ind. App. 600, the precise question arose. The carrier had delivered freight to the wrong person and the consignee brought suit for damages. Notice of the claim had not been given within thirty days after the arrival of the goods at the point of delivery, and defense was made on that ground. WILEY, J.,

said (pp. 603–604): "The general rule is that this condition in a bill of lading is a reasonable one, and that the giving of such notice is a condition precedent to any recovery upon the contract, and that a performance of such condition must be averred in the complaint and proved on the trial. . . . The cases so holding are based upon loss or damage in transitu, and do not relate to cases where there has been a conversion. . . . That the delivery of goods by a common carrier to a third or wrong person amounts to a conversion is so declared by many authorities." In Forbes v. Boston & Lowell R. R. Co., 133 Mass. 154, MORTON, C. J., said (p. 156): "It is settled that any misdelivery of property by a carrier or warehouseman to a person unauthorized by the owner or person to whom the carrier or warehouseman is bound by his contract to deliver it, is of itself a conversion, which renders the bailee liable in an action of tort, without regard to the question of his due care or negligence." In Schouler on Bailments (1905), 392, it is said that "the common law, in fact, treats such misdelivery (of goods to the wrong person) as conversion, and makes the carrier suable in trover." Citing among other cases Shenk v. Steam Propeller Co., 60 Pa. 109, where Justice SHARSWOOD said (p. 116): "There is one point which is indisputable, that he must take care at his peril that the goods are delivered to the right person, for a delivery to a wrong person renders him clearly responsible. . . . Such a wrongful delivery has been held in many cases to amount to a conversion, and that trover may be maintained." The tenth assignment of error is therefore overruled.

Counsel for appellant have attempted to question the ruling of the court below, as to the necessity of an affidavit of defense in this case. That question cannot however be properly raised on this appeal. If appellant had not filed an affidavit within the fifteen days allowed by the order of court, and had permitted judgment to be entered against it for want of an affidavit of defense,

then an appeal from that judgment would have raised the question of the regularity of such judgment. Appellant did not follow that course, but elected to file an affidavit. No judgment was entered until after a trial and verdict under the issue raised by the pleadings. The present appeal is from the judgment entered on the verdict, and only involves such questions as were properly raised by exceptions at the trial. In Xander v. Com., 102 Pa. 434, Mr. Justice CLARK said (p. 439): "An affidavit of defense, unless otherwise provided by rule is only intended to prevent judgment by default; this done, the affidavit is functus officio, its purpose is single and specific, it is no part of, nor connected with, the pleadings, it does not discharge any office, save that only for which it was designed." In Taylor v. Beatty, 202 Pa. 120, our Brother MESTREZAT said (p. 126): "The sole purpose of (an affidavit of defense), in the absence of a rule of court on the subject, is to meet the plaintiff's demand by the allegation of a sufficient legal defense and thereby to prevent a summary judgment." The sixteenth assignment of error is dismissed.

The first, second, third, fourth, fifth, eighth, thirteenth, fourteenth and fifteenth assignments of error are sustained, and the judgment is reversed, with a venire facias de novo.