# Southern Express Co. *v.* Ruth & Son.

*Damage for Wrongful Delivery of Goods.*

(Decided May 28, 1912. 59 South. 538.)

1. *Carrier; Wrong Delivery; Liability.*—Where the agent of an express company has no knowledge of the order, and delivered the package to the person who actually ordered its contents from the shipper, the company was liable for delivering the package to a person other than the consignee, without requiring any proof that he was connected with the consignee, except letters produced by him, addressed to the consignee, as for a wrong delivery.

[Southern Express Co. v. Ruth & Son.]

*2. Same; Limitation of Liability; Presentation of Claim.*—Under section 4297, a clause in the contract of shipment requiring claims to be presented within ninety days, is no defense to an action against the express company for the wrongful delivery of goods.

*3. Same.*—The beginning of an action within the time specified by contract of affreightment for the presentation of a claim for damages is a sufficient presentation of such claim.

*4. Charge of Court; Conformity to Evidence.*—Where the action was for wrongful delivery, and the person receiving the package, though not the consignee, had actually ordered its contents from the shipper, which is not shown to have been known to the agent of the company making the delivery, a charge asserting that if the express company's agent had the right to assume that the shipment was made upon a bona fide order, and if he delivered the package to the party who made the order, the shipper could not recover for the wrongful delivery, was properly denied.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by C. L. Ruth & Sons against the Southern Express Company, for damages for the wrongful delivery of goods. Judgment for plaintiff and defendant appeals. Affirmed.

GEORGE W. JONES, and S. L. FIELDS, for appellant. The demurrers to the pleas were too general.—*Ryall v. Allen*, 143 Ala. 222; *Moore v. Heineke*, 119 Ala. 627. Where the demurrer does not specify the objections it should be overruled, although the pleading is not good.—*Turk v. State*, 140 Ala. 110; *Wilke v. Johnson*, 132 Ala. 268. The clause in the contract requiring presentation of claims for damages is valid.—*Broadwood v. So. Ex. Co.*, 148 Ala. 17; 13 L. R. A. (N. S.) 753. Counsel insist that the provisions of section 5546, is violative of the 14th amendment, and of section 6 of the Constitution of Alabama.—*Mobile v. Dargan*, 43 Ala. 310; *Mobile v. R. S. R. Co.*, 45 Ala. 322; 166 U. S. 266. The court erred in not admitting the letters written by plaintiff and addressed to W. H. Barbour & Co. subsequent to the delivery of the shipment. 3 Wig. sections 2104 and 2120; *Mutual L. I. Co. v.*

*Scott,* 54 South. 182. There was a variance between the allegations and the proof, and the court erred in not excluding the proof on motion.—*M. J. & K. C. v. Lumber Co.,* 48 South. 377. The court should have given the general charge, as requested by the defendant, because of the variance, and because a demand and refusal was not shown.—*L. & N. v. Kaufman,* 37 South. Also because a delivery to the carrier amounts to a delivery to the consignee and divests the shipper of title to the goods.—*Hickey v. McDonald,* 151 Ala. 497; *Pilgren v. The State,* 71 Ala. 368. After such a delivery the shipper has no right except the right of stoppage in transitu.—52 Ala. 752; 103 Ala. 671; 6 Cyc. 473; 110 Mass. 26; 156 Fed. 987; 27 Mo. App. 360; 15 Pa. Sup. Ct. 435. Special attention is called in this connection to the case of *W. U. T. Co. v. Myer,* 61 Ala. 158.

WALTON H. HILL, for appellee. The plea was demurrable as violative of section 5546, Code 1907, and also because the action was trover, and the plea attempted to set up a stipulation contained in an alleged contract.—31 L. R. A. (N. S.) 1178; *M. & M. T. Co. v. Moore,* 144 Ga. 482. Said section abolished the special defenses attempted to be set up in this case.— *L. & N. v. Price,* 159 Ala. 213. The filing of the complaint was a sufficient filing of the claim to be presented, as it was filed within the time required for the filing of such claim for damages.—*Floyd v. Clayton,* 67 Ala. 265; *Jones v. Lightfoot,* 10 Ala. 17. The carrier was bound to deliver to the particular firm or corporation to which the shipment was made.—*Ex. Co. v. Shearer,* 37 L. R. A. 177; Hutchinson on Carriers, section 344; *Am. Ex. Co. v. Fletcher,* 25 Ind. 493; see also; 35 Am. Rep. 107; 10 Am. Rep. 475; 67 Ill. 348.

PELHAM, J.—The judges of this court being unable to reach a unanimous conclusion or decision in this case, under the provisions of the law in such cases made and provided (Acts 1911, p. 96, § 2), the following questions of law were submitted as abstract propositions to the Supreme Court:

"Suit was brought in the trial court by the shippers, C. L. Ruth & Son, against a common carrier, the Southern Express Company, for the conversion of a diamond ring of the value of $165.

"The undisputed proof showed the ring to be worth $165, and to be the property of the shippers, a firm engaged in the jewelry business at Montgomery, Ala., and that it was delivered by the shippers to the express company at Montgomery, Ala., addressed to W. H. Barber & Co., Samson, Ala.; the value, $165, being marked on the outside of the package by the shippers. It was also shown by the evidence, without conflict, that the package was carried by the express company to Samson, Ala., and there delivered by its agent to the party who had ordered the ring; but this person turned out to be a swindler, who had assumed and used the name of W. H. Barber & Co.

"The circumstances attending the transaction are shown by the evidence, as set out in the bill of exceptions, to be as follows: A person, who turned out to be an impostor, addressed a letter to C. L. Ruth & Son, ordering a diamond ring to be sent on approval. The letter was written from Samson, Ala., and stated, 'We desire to purchase a diamond ring,' etc., and was written on printed stationery purporting to be a printed letter head of W. H. Barber & Co., setting out their business (manufacturers of naval stores), and the date line showing 'Samson, Ala.,' while the real place of business of this company, at Brewton, Ala., was also

shown on the printed letter head, indicating that the company had a place of business at Samson, Ala., as well as at Brewton, Ala. The letter was signed, 'W. T. Barber & Co., by J. T. B., and referred to the rating of the company at Brewton, Ala., to be found in the commercial agencies. W. H. Barber & Co. was a reputable business concern having a good rating in the commercial agencies, and doing business at Brewton, Ala., but had no connection with any company by that name at Samson, and had no representative or office or place of business there, and no company by that name had an office or known place of business at that point.

"C. L. Ruth & Son, the shippers, to whom this letter was addressed, after making inquiry of the reliability of W. H. Barber & Co., of Brewton, Ala., and being satisfied of the responsibility of that firm, but making no inquiry as to their having a place of business or representative at Samson, Ala., shipped the ring by express to Samson, Ala., in a package addressed to 'W. H. Barber & Co., Samson, Ala.' No special instructions were given by the shippers to the express company or its agents; nor was anything said or done to put the express company on notice that it was other than an ordinary open shipment. The package having been transported by the express company to Samson, Ala., the impostor who had ordered it called on the express company's agent for the package, and it was delivered by the agent to this person, after he had satisfied the agent of his identity, and that he was the proper person to receive the package, by showing a package of letters or envelopes addressed to W. H. Barber & Co., at Samson, Ala., duly postmarked, etc. The evidence of the agent who delivered the package, as set out in the bill of exceptions, is as follows:

" 'That he was agent of the Southern Express Company at Samson, Ala.; that this party came and had some express, the package mentioned, and asked for it, and witness asked him to identify himself; that he said he had nobody that knew him; that he was just a stranger there; that he was just from Brewton, and that he had letters in his possession, and took out a batch of about 8 or 10 letters and showed the witness the envelopes, addressed to W. H. Barber & Co.; that there was no other firm at Samson at the time purporting to do business as W. H. Barber & Co.; that he receipted for the package by signing W. H. Barber & Co., by J. T. Barber; that the shipment was forwarded from Montgomery on April 1, and delivered in Samson April 3, 1911.

" 'Upon cross-examination, the witness, upon being asked what identification he demanded of the man who presented himself for the package, testified that he demanded that the party identify himself, showing that he was the right party. Upon being asked what he did do, the witness testified that he showed the witness the letters; he having a batch of envelopes addressed to W. H. Barber & Co., postmarked Samson. Upon being asked if he knew, at the time he turned the package over to the party, that W. H. Barber & Co. did not do business at Samson, the witness replied that he knew there was not any firm prior to that time; that the party claimed to represent W. H. Barber & Co. at Samson, Ala.; that he had no written order, signed W. H. Barber & Co., to deliver the package to the party. Upon being asked if he delivered the package to the party when he was shown the envelopes addressed to W. H. Barber & Co., the witness testified, "No;" that he asked the party some questions—if there was any other way he could identify

himself—and the party said there was no other way he could identify himself, if witness was not satisfied that he was the right party. Witness was then asked if, as soon as the party showed witness the letters addressed to W. H. Barber & Co., witness turned the package over to him, to which the witness replied that after witness questioned him the party said that was the only way he had to identify himself; that he could refer to the hotel man; that witness turned the diamond over to the party upon identification of letters postmarked Samson; that witness did not have any order in writing from W. H. Barber & Co. to turn the package over to J. T. Barber.

" 'Upon redirect examination, the witness testified that the letters were addressed to W. H. Barber & Co., Samson, Ala.'

"W. H. Barber & Co., of Brewton, Ala., were shown to have had nothing whatever to do with the transaction, and to have had no connection with the impostor, who assumed and used the name of the company. None of the members of the company of W. H. Barber & Co., of Brewton, Ala., were personally known to or by any of the members of the firm of C. L. Ruth & Son, of Montgomery, Ala. The ring was shown to have been lost to the shippers. All evidence having a tendency to show any negligence on the part of the defendant or its agents is herein set out. There was no testimony going to show that the defendant or its agents had notice of the deceit or fraud being practiced by the impostor.

"First. Under the facts and circumstances of this case as we have above set them out, is the defendant carrier liable to the plaintiff shippers in this action?

"Or, stating the proposition as it arose upon the trial, second, was the defendant entitled to the general af-

firmative charge in its behalf, requested by it in writing?

"Third.  If it is the conclusion of the Supreme Court that the defendant was not entitled to the general charge, was the trial court in error in refusing to give, at the request of the defendant, the following charge requested by it in writing, to wit:  'The court charges the jury that, if they believe from the evidence that the defendant had a right to assume the shipment was made on a bona fide order, and delivered the goods to the party who made the order, plaintiff cannot recover?'"

In answer to this submission, the Supreme Court has rendered the following opinion by SIMPSON, J.:

"The facts of the case, and the matter referred to this court, are distinctly stated in the certificate of the Court of Appeals.

"The law in regard to the responsibility of the carrier to deliver goods intrusted to it to the person to whom they are addressed is very stringent, and necessarily follows from the nature of the business of a common carrier.  'No circumstance of fraud, imposition or mistake will excuse the common carrier from responsibility for a delivery to the wrong person.  The law exacts from him absolute certainty that the person to whom the delivery is made is the party rightfully entitled to the goods, and puts upon him the entire risk of mistakes in this respect, no matter from what cause occasioned, however justifiable the delivery may seem to have been, or however satisfactory the circumstances or proof of identity may have been to his mind; and no excuse has ever been allowed for a delivery to a person to whom the goods were not directed or consigned.  If, therefore, the person who applies for the goods is not known to the carrier, and he has any doubt as to his being the consignee, he

should require the most unquestionable proof of his identity.'—2 Hutchinson on Carriers (3d Ed.) § 668, pp. 739, 740.

"The cases are numerous in which an impostor addressed orders to the consignor, falsely representing himself to be some firm in existence, or some fictitious firm, and in accordance with the order the goods were shipped to said real or supposed firm; and the courts have held, in accordance with the fundamental principles of law of carriers, that the carrier was liable for not ascertaining the proper party to whom the goods were addressed and delivering them accordingly, or, if the party could not be found, holding the goods subject to the order of the shipper.—2 Hutchinson on Carriers (3d Ed.) §§ 669-672, and notes; *Pacific Express Co. v. Shearer,* 160 Ill. 215 (43 N. E. 816), 37 L. R. A. 177, 184, and notes (52 Am. St. Rep. 324).

"In the case of *American Express Co. v. Fletcher, et al.,* 25 Ind. 492, 494, although the agent of the express company was also the agent of the telegraph company, and the goods were sent in response to a telegram sent through his office by the impostor, the carrier was held responsible for delivering the goods to said impostor; the court saying: 'That the package had been sent in response to a telegram purporting to be from J. O. R. simply proved that said R. had credit, * * * not that the person who sent the dispatch, or that any man pretending to be him, was to receive it.'

"So, where a person assuming the name of another, telegraphed, in the name of such other (V. M.) to a bank to send him $500, and the amount was sent by express, addressed to said V. M., and, although the hotel keeper appeared with the impostor and stated that 'he (V. M.) is here now,' the company was held liable; the court saying: 'It is the settled doctrine of Eng-

land and of this country that there must be an actual delivery to the proper person at his residence or place of business, to his number, or to the party in whose care addressed, and in no other way can the carrier discharge his responsibility, except by proving that he has performed such engagement, or has been excused from the performance of it, or prevented by the act of God or a public enemy.'—*Southern Express Co. v. Van Meter,* 17 Fla. 783, 35 Am. Rep. 107, 109, 110.

"It is true that there are cases where the margin between liability and non-liability is so closely drawn that it is difficult to draw the distinction; and it must be acknowledged, also, that there are some cases in conflict with the great weight of authority. In the case of *Samuel v. Cheney,* 135 Mass. 278, 46 Am. Rep. 467, there were two persons in the town, each having a place of business under the name of 'A. Swannick,' although it seems to be admitted that one of them was a swindler, yet one of them (the swindler) designated himself by giving his post office box as 1595. This was the person with whom the seller corresponded, and to whom the goods were addressed. In other words, the goods were delivered, in accordance with the address, to the person to whom they were sold, though the seller supposed he was the responsible man.

"In the case of *Edmunds v. Merchants' Transportation Co.,* 135 Mass. 283-285, two cases were tried together. In the first, A. represented himself to be P., a reputable merchant of D., and bought the goods personally; and the court said that, as the seller intended to sell to the person who was present before him, and did sell to him, so that the title to the goods passed to the person before him, though he thought him to be another, the carrier was held not liable for delivering to him.

"In the other case, 'the contract did not purport, nor the plaintiffs intend, to sell to the person who was present and ordered the goods. The swindler introduced himself as a brother of Edward Pape, of D., buying for him,' so that 'the relation of vendor and vendee never existed between the plaintiffs and the swindler. The property in the goods, therefore, did not pass to the swindler; and the defendant cannot defend, as in the other cases, upon the ground that it has delivered the goods to the real owner.'

"In the case of *Dunbar v. Boston, etc., R. Co.*, 110 Mass. 26, 14 Am. Rep. 576 (which we do not mean to approve), the goods were bought by the swindler (G), in person, giving a fictitious name (Y.). There was no such person as Y., and the carrier was held not liable, as the goods reached the person to whom they were sold.

"Mr. Hutchinson draws the distinction between these and other cases, shows that the *Cheney Case* 'has been disqualified even by those courts which recognize that case as enunciating a correct principle of law,' then cites the *Shearer Case, supra*, with approval (sections 672, 673), and, after recognizing the undenied principle that the owner shipping the goods may be responsible, where he misleads the carrier, winds up the discussion thus: 'It will thus be seen that no possible circumstances of fraud, imposition, or mistake, causing the delivery to the wrong person, which have not been induced by the conduct of the owner of the goods, or in which he has not participated, will, at least according to the American cases upon the subject, excuse the carrier from liability for the value of the goods, if they are thereby lost; and that, when the owner of the goods has been made the dupe of an artifice which has induced him to pursue a course in reference to them which has

led to the delivery by the carrier to an improper person, who was not really entitled to them, the carrier will nevertheless be responsible for the loss thereby occasioned, where he has been guilty of negligence, but in some jurisdictions, not where, in good faith, he has delivered to the person to whom the owner actually directed the goods, although the owner may have been misled.'—Section 679, p. 758.

"Judge Elliott, after noting the various cases, mentions the only exception to the absolute liability of the carrier for a wrong delivery as, 'if the misdelivery is caused by misdirection or other negligence on the part of the shipper, or if fraud is perpetrated on him by a third person in such a manner that he really parts with the title to the goods to such third person, the carrier, rightfully acting on the faith of appearances which the owner himself has created, and in accordance with his directions, and without negligence, ought not to be held liable to him for delivering the goods to such third person, although the owner was imposed on by him.— 4 Elliott on Railroads (2d Ed.) § 1526a. pp. 257, 258.

"The case of *Western Union Telegraph Company v. Meyer,* 61 Ala. 159 (32 Am. Rep. 1), decided by a divided court, with no argument in favor of the majority, is based upon the facts that a swindler, personating another, telegraphed for money, and the money came by telegraphic order through the office of defendant, in response to his telegram. The majority of the court thought there was 'nothing to create suspicion in the minds of the company's agents.'

"It is unnecessary to decide whether the case in our own court, just cited, is sound law or not, as the case now before the court does not come within any of the exceptions which are held to relieve the carrier. The ring was simply delivered to the carrier, addressed not

to J. T. Barber, but to 'W. H. Barber & Co.' There is no evidence that the plaintiff did or said anything to lead the carrier to believe that the ring was to be delivered to any other than W. H. Barber & Co. There is no evidence that the carrier even knew that the man in Samson had written for the ring at all; nor was the order sent through the defendant and the response by the same channel, as in the *Meyer Case.* In short, it was simply an ordinary shipment to W. H. Barber & Co., without any peculiar facts or circumstances about it, brought to the attention of the agent of the carrier, who knew that up to that time there had been no firm of that name in Samson; and although the man told him that he was a stranger, just arrived there, and had no way to identify himself, except by exhibiting the outside of eight or ten letters, or the envelopes, addressed to W. H. Barber & Co., at Samson, Ala., postmarked Brewton, Ala., and although the man suggested to him to inquire of the hotel keeper, he made no further inquiries, and delivered the goods to the impostor.

"The facts being without conflict, the defendant was not entitled to the general charge; nor was the defendant entitled to the other charge requested, to-wit: "The court charges the jury that, if they believe from the evidence that defendant had the right to assume the shipment was made on a bona fide order, and delivered the goods to the party who made the order plaintiff cannot recover.' This charge, while being otherwise faulty, according to the principles of law stated, was abstract and misleading, as there was no evidence tending to show that any facts were presented to the agent from which he would have a 'right to assume that the shipment was made on a bona fide order,' nor that the goods were delivered 'to the party who made the order.' All the Justices concur, except DOWDELL, C. J., not sitting."

[Southern Express Co. v. Ruth & Son.]

The principal controversy involved in this appeal is disposed of by the opinion of the Supreme Court, above set out.

The plaintiff's demurrers to the defendant's special pleas setting up a provision exempting the defendant from liability for loss or damage, unless claim therefor be presented by the claimant in writing within 90·days from date of loss or damage, were properly sustained. —Code, § 4297; *N. C. & St. L. Ry. v. Hinds, infra*, 59 South. 670. Besides, the record shows that the suit was brought within the 90 days, and this is a sufficient presentation of the claim.—*Floyd v. Clayton*, 67 Ala. 265; *Hallett & Walker v. Bank*, 12 Ala. 193; *Jones v. Lightfoot*, 10 Ala. 17; *Boggs v. Bank*, 10 Ala. 970. And, too, this suit was in trover for a conversion of the goods, and would probably be deemed as an abandonment of the contract of shipment; and it is questionable if a plea setting up a condition of the contract would be a good defense.—See *Salburg v. Pa. Ry. Co.*, 228 Pa. 641, 77 Atl. 1007, 31 L. R. A. (N. S.) 1178, and authorities cited in note; *M. & M. Tras. Co. v. Moore*, 124 Ga. 482, 52 S. E. 802.

The ruling of the court as to the letter or letters written by the plaintiff and asked about on the cross-examination of the witness Ruth shows no reversible error. The defendant was allowed to examine the witness with reference to the contents of the letters without objection.

From what appears in the opinion of the Supreme Court, and has been previously said, it will be seen that no error was committed by the trial court in overruling the defendant's motion to exclude the plaintiff's evidence and direct a verdict, or in refusing the charges requested by the defendant in writing, or in overruling the motion for a new trial. As conceded by appellant

[Northern Alabama Railway Company v. Bidgood.]

in brief, "the entire case, as we see it, rests upon a principle of law as to whether, under the circumstances of this case, there was liability against the defendants for the delivery of the ring under the circumstances as they existed," and this proposition is answered by the opinion of the Supreme Court, herein set out, adversely to the contention of the appellant. There is no error in the rulings of the trial court on the principle of law presented prejudicial to the interests of the defendant. or that would authorize a reversal of the case.

Affirmed.