# Salberg v. Pennsylvania Railroad Company, Appellant.

*Carriers—Common carrier—Bill of lading—Contract—Delivery to consignee without surrender of bill—Waiver—Claim for loss— Evidence—Case for jury.*

In an action by consignors against a railroad company for the value of goods delivered to the consignee without requiring the production and surrender of the bill of lading, the case is for the jury and a verdict and judgment for the plaintiffs will be sustained, where the evidence tends to show that no course of dealing existed between the plaintiffs and the defendant which could be regarded as a waiver of a provision of the bills of lading which required their production and surrender before the delivery of the goods, and that the plaintiffs did not, with knowledge of the delivery of the goods without the surrender of bills of lading therefor in many instances, consent to, approve, or ratify such a course of dealing · between the consignee of the goods and the agent of the railroad company.

Argued April 29, 1912. Appeal, No. 43, Jan. T., 1912, by defendant, from judgment of C. P. Elk Co., Jan. T., 1908, No. 130, on verdict for plaintiff in case of Charles O. Salberg and Herbert T. Morey, doing business under the firm name of Ridgway Grain Co. v. Pennsylvania Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass.to recover the value of seventeen carloads of grain and hay delivered by the defendant to one Duke Copelin without production of the bills of lading or. payment of the drafts attached thereto. Before HALL,. P. J.

At the trial it appeared that the bills were known as "order" bills of lading, and that they contained this provision:

"9. If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned without any condition or limitation other than the name of the party to be notified of the arrival of the property the surrender of this bill of lading properly endorsed shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading."

It was admitted that the shipments in question, were delivered to Copelin without the production of the bills of lading, but the railroad company contended that there was a course of dealing with regard to previous shipments over the same route and to the same party which justified the defendant in concluding that the plaintiffs had, waived the provisions of the written agreement.

The court charged in part as follows:

"Does the fact that the plaintiff company knew of it and made no complaint constitute a course of dealing which would amount to a waiver of their rights against the railroad company under their contracts, or if there was no course of dealing between the grain company and the railroad company has the grain company by its silence as to the course of dealing between the company's agent and Copelin adopted it and waived its rights against the defendant company? These, gentlemen, are the pertinent questions which you must determine." (4)

"If you find under all the evidence in the case that there was a course of dealing between the plaintiff and defendant companies such as I have described, which would waive the provisions of the bills of lading, or if

you should find that the plaintiff company consented to
and ratified any such course of dealing between Copelin
and the railroad company, your verdict should be for
the defendant; but, on the other hand, if you find that
there was no such course of dealing between the plain-
tiffs and the defendant company, or if you find that there
was no such course of dealing between Copelin and the
railroad company, or its agent, which was ratified and
consented to by the conduct of the plaintiff company,
then your verdict should be for the plaintiffs for the
value of the goods wrongfully delivered, with interest
from the date of delivery." (5)

Verdict and judgment for plaintiff for $8,907.01. De-
fendant appealed.

*Errors assigned,* among others, were (1) refusal of
binding instructions for defendant, and (4, 5) above
instructions, quoting them.

*Seth T. McCormick,* with him *John G. Whitmore,* for
appellant.—In the face of his written declarations to
the contrary the testimony of the witness Morey that he
did not know whether the cars were being delivered
without the bills of lading or whether the bank was de-
livering the bills of lading without payment of the
drafts, amounts at most to but a scintilla: Com. v. Jon-
grass, 181 Pa. 172; Joyce v. R. R. Co., 230 Pa. 1; Phila.
& Reading R. R. Co. v. Yerger, 73 Pa. 121; Holland v.
Kindregan, 155 Pa. 156.

Whether an established state of facts constitutes a
waiver is for the court: Philips v. Aid Society, 6 Pa.
Superior Ct. 157; Corcoran v. Life Insurance Co., 183
Pa. 443; Moore v. Carter, 146 Pa. 492.

Whether an estoppel results from established facts is
a question for the determination of the court: Keating
v. Orne, 77 Pa. 89; Cox v. Rogers, 77 Pa. 160; Union
Trust Co. v. Cain, 29 Pa. Superior Ct. 189; Reed v. Reed,
46 Pa. 239.

*Max L. Mitchell,* with him *Eugene H. Baird,* for appellees.—The case was for the jury: Tozer v. Jackson, 164 Pa. 373; Richardson v. Moyer, 155 Pa. 174; Chalfant v. Goldbeck, 173 Pa. 354; Murphy v. Nat. Bank, 184 Pa. 208; Hyde v. Kiehl, 183 Pa. 414; McSwegan v. Penna. R. R. Co. 7 N. Y. App. Div. 301 (40 N. Y. Supp. 51); Goodman v. Transportation Co., 6 Pa. Superior Ct. 168; Rhawn v. Edge Hill Furnace Co., 201 Pa. 637.

When bills of lading are drawn to "order" the carrier is under no duty and has no right to deliver the goods to any claimant without the production and surrender of the bill of lading, and if it does so it acts at its own risk and peril: Shenk v. Steam Propeller Co., 60 Pa. 109; Fernwag v. R. R. Co., 117 Pa. 46; Penna. R. R. Co. v. Stern, 119 Pa. 24; Forbes v. Railroad Co., 133 Mass. 154.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

The question involved in this appeal, which is that of the liability of the defendant company for the value of seventeen carloads of grain and feed delivered by the agent of the defendant to the consignee, without requiring the production and surrender of the bills of lading, was under consideration here before, and the case is reported in 228 Pa. 641. It is due to the court below to say that the writer of this opinion, in formulating the decision of the court upon the former appeal, failed to note accurately the distinction in the testimony on behalf of the plaintiffs between that as to their knowledge of the surrender of the bills of lading attached to sight drafts and that bearing upon the fact of the nonpayment of the drafts themselves. As the record stood upon the former appeal, the testimony both oral and documentary showed beyond question knowledge upon the part of plaintiffs that the drafts to which the bills of lading were attached were unpaid, and that they knew that notwithstanding this fact the grain had been delivered to Copelin, the consignee. We assumed that nonpayment of the drafts meant, as an unquestioned

consequence, the retaining by the bank of the bills of lading attached to the drafts, and that knowledge of the delivery of the grain under these circumstances, necessarily involved knowledge that the cars were being delivered by the agent of the defendant company without requiring the surrender of the bills of lading. But a re-examination of the testimony, as shown by the record in the former appeal, and a careful comparison of it with the evidence presented upon this appeal, shows that the plaintiffs while admitting knowledge of the delivery of the shipments without payment of the drafts, said that they did not know whether the railroad company was delivering them without the production of the bills of lading, or whether the bank was surrendering the bills of lading without the payment of the drafts. Overlooking this distinction, we were led to the conclusion, as stated in the former opinion, that there was no room to doubt the fact of plaintiffs' absolute knowledge of the deliveries of the cars without the surrender of the bills of lading. The testimony does, however, in this respect, raise a disputed question of fact, which was for the determination of the jury. It was the duty of the carrier to heed the provision of the bill of lading requiring its surrender before making delivery of a car, and it can only escape the consequences of its failure to discharge that duty by showing that the plaintiffs, the consignors, had been guilty of laches, or that their conduct was such as to estop them from setting up title to the goods under the circumstances. The trial judge submitted to the jury the question whether the plaintiffs ratified or approved the action of the defendant company in delivering cars without the surrender of the bills of lading, and the verdict was in favor of plaintiffs. As the court below said, there was no evidence that the plaintiffs ever waived directly their rights under the bills of lading, nor did it appear that there were any communications concerning the matter of delivery between the plaintiffs and the defendant com-

pany. The action of the local agent was in disregard of
the rules of the railroad. The course of dealing what-
ever it was, can hardly be said to have been between the
plaintiffs and the railroad; it was between the plaintiffs
as grain dealers and their customer, who purchased the
grain and feed in question. Nor do we see that the at-
tempts made by plaintiffs to collect the price of the
goods from the person to whom they had been improp-
erly delivered, without requiring him to obtain and
surrender the bills of lading, is to be necessarily re-
garded as a waiver of the rights of the shippers against
the carrier, to recover for the wrongful delivery. The
basis upon which the claim that plaintiffs ratified and
acquiesced in the delivery of the cars without requiring
the surrender of the bills of lading, lies in and depends
upon the proof that plaintiffs had knowledge of the fact
that such deliveries had actually been made. As op-
posed to the conditions shown to have existed, and from
which such knowledge was fairly to have been inferred,
Mr. Morey, one of the members of plaintiffs' firm, who
seemed to have been in active charge, testified positively
that, while he did know the goods were delivered, yet
he did not know that it was without the surrender of
the bills of lading. He offered as an explanation of
this statement, the suggestion that the bank might have
violated its instructions, and have given up the bills
of lading to the consignee without first requiring the
payment of the sight drafts to which they were attached.
He said in substance that he knew that either the bank
or the railroad agent was at fault, but he did not know
which, and made no effort to find out. His credibility
was, however, for the jury; and, in the face of this testi-
mony, the court below would not have been justified in
giving binding instructions upon this point in favor of
the defendant.

The verdict must, under the charge of the court, be
accepted as establishing first, the fact that no course of
dealing was shown to have existed between the plaintiffs

and the defendant company, which can be regarded .as a waiver of the provision of the bills of lading which required their production and surrender before delivery of· the goods; and, secondly, the fact that the plaintiffs did not, with knowledge of the delivery of the goods without the surrender of bills of lading therefor in many instances, consent to, approve or ratify such a course of dealing between the consignee of the goods and the agent of the railroad company.

The assignments of error are overruled, and the judgment is affirmed.