MALVERN COLD STORAGE COMPANY, Appellant, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellee.

JUNE 26, 1928.

*Cook & Cook*, for appellant.

*W. S. Lewis* and *D. E. Whitfield,* for appellee.

MORLING, J.—For the purpose of the question here presented, the facts, so far as disputed, and so far as the evidence war-

rants, must be found to be such as are most favorable to plaintiff's contention.

Plaintiff made the three shipments of eggs on the dates claimed, consigned to Swift & Company at Fort Dodge. Defendant received them, delivered them at Swift & Company's place of business in Fort Dodge to Potter, and took receipts for them, signed in the name of Swift & Company, by Potter. Plaintiff did not receive pay for the eggs. It is to be inferred that Potter converted the eggs to his own use, and afterwards absconded. The question here is whether, under the facts of the case, the defendant, as to plaintiff, the consignor, was warranted in making delivery at Swift & Company's place of business to its agent in charge there, Potter. Plaintiff's point is that Potter had no authority to purchase or receive eggs for Swift & Company. Plaintiff introduced the contract between Swift & Company and Potter, which recites:

"Swift & Company, a corporation with its principal office at Chicago, Illinois, * * * hereby appoints W. A. Potter of Fort Dodge, Iowa, hereinafter referred to as 'agent,' its special agent at Fort Dodge, Iowa, for the sole purpose of purchasing cream for it upon the following terms and conditions * * * It is understood and agreed that the agent's authority is strictly limited to purchasing cream from the producers thereof * * * Swift & Company also agree to pay rent of $25 per month for building but one half of same to be deducted from com. pay a com. of 3 cts * * * Do necessary advertising for him. * * * The agent to ship the cream purchased to the company's creamery at Iowa Falls, Ia. * * * "

At the time of making this contract, Swift & Company leased from the owner a building in Fort Dodge, and "put Mr. Potter in charge." For a time, Swift & Company furnished Potter with blank forms of checks, but later took them away from him.

"Following November 8th or 10th, 1925, Swift & Company bought Potter's cream from him as we would any other cash buyer, and paid him for it, with the commission added, with our check from Iowa Falls. * * * paid for the cream with his own check, and shipped it to us, and we paid him with our draft, with the commission added."

Potter, then, bought cream and paid for it, and was paid therefor by Swift & Company. On the outside of the building there was a sign, "Cream Buying Station for Swift & Company." On the window was a sign, "We Pay Cash for Cream, Eggs and Poultry." There were egg cases about the building. The general agent of Swift & Company knew of the sign on the window, and saw the egg cases. Swift & Company never bought or received any eggs from Potter. Potter evidently was buying the eggs on his own account, under the name of "Fort Dodge Produce Exchange." Swift & Company's general agent knew from the start that Potter was buying eggs, and never objected. There was no other building in Fort Dodge "designated as Swift & Co." Swift & Company still occupy the building. The building was rented and the contract with Potter made about the 15th of October, 1925.

Plaintiff's secretary testifies that, in November, 1925, he received a telephone call from Fort Dodge, and the man on the other end of the line "said his name was Potter, manager of Swift & Company of Fort Dodge, and asked if we had any cold storage eggs for sale. * * * He said to ship him 10 cases as a sample, and we did. * * * After that, we received a second telephone call, and the man said he was Mr. Potter, manager of Swift & Company at Fort Dodge, and he said he had received the eggs, and they were satisfactory, and said he would take 30 cases, to be shipped each Monday. * * * to Swift & Company, Fort Dodge, Iowa, * * *"

Plaintiff delivered the eggs to defendant, American Railway Express Company, and took its receipt, showing "Destination office Fort Dodge, Iowa. Consignee Swift & Co." Plaintiff's secretary further testifies that his action in consigning the eggs "to Swift & Company was on the strength of the telephone conversation which I had with this party at Fort Dodge, and the telegram. I did not go to Fort Dodge, to see if Swift & Company was up there, or anything about it. I relied on the statement that was made over the telephone, and later confirmed by the telegram, and believed that the statements that were given over the phone and the message that I received were genuine, and that this shipment was a genuine shipment, and I sent it on the strength and believing that Swift & Company was doing business at Fort Dodge, Iowa."

"I received the telegram from Swift & Company of Fort Dodge about the middle of November, 1925. * * * We thought, when we shipped the three shipments in controversy, that W. A. Potter was doing business for Swift & Company. I did not know whether or not W. A. Potter was in control of the office of Swift & Company at Fort Dodge, but he said he was. I did not know that he had control of the building in Fort Dodge. He told me that they had an office there, and I relied upon that, and shipped him 90 cases of eggs on the strength of the telephone conversation and the telegram."

He also says that he had previously seen Potter at Malvern. The tags on the eggs read, "Swift & Company, Fort Dodge, Iowa." No street address was on them. The record is silent in regard to sending bill of lading to Swift & Company or Potter. The first (sample) shipment was paid for. Plaintiff's secretary testifies with regard to that, that they "received returns a little later, signed Swift & Company, by W. A. Potter. We received the money." The eggs were what the express company terms "perishable shipments," and were delivered on special delivery, first in the morning and first in the afternoon. The defendant took the three shipments in controversy to Swift & Company's place of business at Fort Dodge, in the building referred to, and delivered them there to Potter, who signed receipts for them in the name "Swift & Co." The expressage was paid for by checks signed "Fort Dodge Produce Exchange, by W. A. Potter." The express agent "never took it up with Swift & Company, to determine the extent of Potter's apparent authority."

I. It is clear that plaintiff sold the goods to Potter, though believing that Potter was buying them for Swift & Company, and believing that Potter had authority so to do. The deception practiced was in Potter's representation (implied, at least) that he was purchasing and authorized to purchase for Swift & Company, and in Potter's concealment of the fact that he had no authority to purchase for Swift & Company, but was purchasing for himself, with intent (probably) to defraud. Plaintiff, in selling the eggs, knew precisely what individual was ordering them, but took it for granted that that individual was ordering them for Swift & Company. Swift & Company did have a place of business at Fort Dodge. Potter was agent for Swift & Company at, and in charge of, that place of business. Plaintiff, by

accepting the order and shipping the eggs, intended them to go to Swift & Company, and to Potter, as its manager, intending that defendant should deliver them at Swift & Company's place of business in Fort Dodge, where Potter was manager, and to Potter, though plaintiff expected that Potter would receive them in his representative, rather than in his individual, capacity. Swift & Company is a corporation. Its place of business at Fort Dodge was a branch establishment. It was not in charge, as plaintiff knew, of an individual proprietor, but of a local manager. As Swift & Company had a place of business, and only one, in Fort Dodge (especially in view of the sign upon the window), the consignment and direction and duty to deliver were, from the necessity of the case, to deliver to Swift & Company at that place of business in Fort Dodge, to the agent in charge there. Plaintiff so intended and expected. The delivery at that place and to Potter, and Potter's receipt for the eggs, were precisely what plaintiff intended and expected, and what defendant would reasonably understand was required. The wrong that was perpetrated was the antecedent wrong of Potter in misrepresenting or concealing the true nature of his authority, and his purpose. The mistake was the plaintiff's mistake. The delivery was just what was intended, and, so far as plaintiff is concerned, was authorized. Potter's want of authority to receive possession of the eggs was (as affects this case) merely the result of his want of authority to make the purchase. The case is not one of non-delivery to the real consignee. The defendant has, therefore, not violated its contract or duty to make delivery as instructed and intended. Plaintiff does not plead negligence, nor would the record sustain a charge of negligence. Swift & Company did have a place of business (and one only) at Fort Dodge. On the window was the sign, "We pay cash for * * * eggs * * *." The eggs were delivered to the person in charge of the place of business. There was nothing to put the defendant on inquiry as to whether the manager had authority to receive eggs. The defendant by the terms of the consignment was entitled to assume that the title to the eggs had passed to Swift & Company, and, so far as plaintiff at least is concerned, was authorized to deliver them to Swift & Company at its place of business in Fort Dodge. It would have been an impertinence on the part of the defendant to question the business transaction

by which plaintiff was shipping eggs to Swift & Company at Fort Dodge, or to question or undertake to determine the authority of the manager there to purchase and receive them, or to delay their delivery.

We have been cited to no authority precisely in point, but see, on the general principles involved, and as illustrating the various phases in which similar controversies have come before the courts, *Angle v. Mississippi & M. R. Co.*, 18 Iowa 555, 562; *Anchor Mill Co. v. Burlington, C. R. & N. R. Co.*, 102 Iowa 262; *Dunbar v. Boston & P. R. Corp.*, 110 Mass. 26; *Samuel v. Cheney*, 135 Mass. 278; *Oskamp, Nolting & Co. v. Southern Exp. Co.*, 61 Ohio St. 341 (56 N. E. 13); *Pacific Exp. Co. v. Shearer*, 160 Ill. 215 (43 N. E. 816, 37 L. R. A. 177, 52 Am. St. 324); 2 Hutchinson on Carriers (3d Ed.), Sections 662 to 679; 10 Corpus Juris 255 et seq.; *Southern Exp. Co. v. Ruth & Son*, 5 Ala. App. 644 (59 So. 538); *Kommel & Son v. Champlain Trans. Co.*, 93 Vt. 1 (105 Atl. 253). As defendant did not violate its instructions in reference to delivery, did deliver to the real consignee contemplated, did not participate in the fraud perpetrated on plaintiff, in no degree occasioned plaintiff's mistake, and was not guilty of negligence, verdict was properly directed in its favor.

This conclusion makes it unnecessary to consider other assignments of error.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.